Case number 213859, Patricia Wilkes v. Kokosing Inc. Argument not to exceed 15 minutes per side. Mr. Wilder, you may proceed for the appellant. Good morning. Good morning, Your Honors. May it please the Court, Marvin Wilder on behalf of the appellant, Patricia Wilkes, along with my co-counsel, Lillian Dowell. We respectfully pray that this panel reverse the decision of the District Court for three main reasons. Number one, the Court erred when it granted Appellee's motion for summary judgment deciding questions of fact, namely that Appellee complied with ODOT standards, specifically compliance with the Bridge Design Manual in effect, which require vandal protective fencing to be installed on all bridges over vehicle or traffic. Number two, the District Court's reliance on Jackson v. City of Franklin is misplaced because that case has limited application, primarily for design defect cases. Thirdly, contractor liability and state liability are not mutually exclusive terms. The appellee is independently liable for its role in approximately causing the death of the decedent. I'll briefly go through the facts as a very simple case. Well, can I just go to your first point? So tell me, understand, let's just say the contract doesn't reference this as I understand it, but let's just say it's significant and it's relevant to the case. I'm looking at it and I'm trying to figure out, it says for existing bridges, fencing shall be provided when new concrete or refaced concrete barriers are installed. What I can't figure out is, are they saying something about the vandal protective fencing? You've got to have vandal fencing during construction? That's what I can't, I'm not able to see from the language I'm looking at. I'm at 305.2, when to use. The bridge design manual required protective fencing on any bridges that were over interstate traffic. It was silent as to what happens in the event of a temporary reconstruction project. So isn't that what this is? Yes. This is a construction project. Three weeks after this incident, the Ohio Department of Transportation clarified their policy and said that now you have to have temporary fencing. And the court may consider that a remedial measure. Our argument is that that was inclusive in the original bridge design manual mandate. What's your best language from that bridge design manual to show that the express language of the fencing mandate does not differentiate between finished bridges, bridges under construction, or any other subset? So the first sentence, fencing shall be installed on all bridges over vehicular traffic except as noted herein and there's no exception would be your way of thinking about it. There's a chart in the bridge design manual and that's in the record at 2618 page 371 and it says bridges under interstate fencing required, yes. It says fencing shall be installed on all bridges over vehicular traffic except as noted herein. And there's no exceptions. There's no exceptions noted in the record. There's no exceptions offered by the appellees. There was none asked for by the court. The term all means all, all inclusive. Now if you wanted to say that it had an exception for temporary bridges or temporary fencing or bridges under construction projects, it should say that. It did not say that. It said all. Any one of us would be very concerned if we were driving on the interstate knowing that there was no protective fencing over these bridges. We, in coming from Michigan to this court, we went a different route simply because we did not want to go the same route that Mr. Byrd went through. We have these protective fencing in particularly urban areas because there's been a long history of vandals, vandal situations where bricks have been thrown, rocks have been thrown. The very incident that happened here in this incident in December happened in Michigan in October. So my recollection is ODOT inspected it all the time, right, while the project was underway and never cited them for this problem. So their interpretation of this was consistent with the company's and the district court's. Am I right about that or wrong? You're right in the sense that ODOT was in there and they could have said something. But as my mother would say, two wrongs don't make a right. Because the state... Because there's ODOT, there's the company, there's the district court. Everyone said that consistently, correct? All of them have said, and I thought, you should correct me if I'm wrong, my memory might be bad. I thought after this incident they changed the manual. Am I wrong? They changed the manual to address bridge construction projects and allowed for temporary fencing in that event. To me it was clarifying... That's a subsequent remedial, but wouldn't that at least indicate that ODOT didn't think so before and thinks they need to add this now? I'm just curious. I believe that the state speaks through those that are on site and those embedded in their policies and the manual itself. You can't say that the state speaks only by those that are on the site. It speaks through its policies and the policy said all bridges over vehicular traffic. And this happens to be one. Where is it that COCOSING is obligated to follow this manual? Is that in the contract? It's ODOT's specifications. There are ODOT specifications in ODOT's manual that says this is how you design a bridge. It tells you how many feet, what kind of concrete to use. Does it say that in the contract then? That you have to follow all of this? It doesn't say that, but it's called the bridge design manual for a reason. It is their best mandate on how to put together a bridge. If you look back at the history of the creation of the policy, there were incidents that occurred. There was specifically a man, Randy and Sharon Budd, who were traveling to Pennsylvania from Ohio and Mrs. Budd had brain damage because of a rock being thrown from an overpass. They encouraged Ohio to pass this law. In lieu of that, in lieu of a law, they said let's do it by the policy because we can do it quicker and ODOT had agreed to do it. Originally when they were doing the project, COCOSING and ODOT were in agreement to close the bridge, which is another alternative means of fixing that problem. Close the bridge, do the construction. I'm curious about that, closing the bridge. Wasn't the sidewalk, didn't it have something saying don't walk here? Essentially the sidewalk was closed. You know the point I'm making. Vandals don't pay attention to that. Why are they going to pay attention to bridge closed? The walkway was open, right? There was a walkway that was open and there was a road that was open. And it was merely across the road. It's a two lane highway, half of it was gone. The sidewalk from which it was thrown, was that closed or not? It was not closed. It's a highway, like a two lane highway. They took the sandbag, walked across the street and dropped the sandbag. You're saying they have to fence both sides, even though they're only working on one? Yes, whether it's temporary fencing. I'm not even saying that you have to have a fence. I'm saying that they had independent liability because they removed the fence and they did not mitigate the risk of harm. Why would they, just as I understand their interpretation. All fence, that's a good argument in my mind. But 3056 relates to temporary vandal fencing. Why would they have this added if they thought it was encompassed in 3052? I think you're reading the amendment after the fact. Yeah, but my point is why add a whole new section? Why not just clarify 3052? I'm just trying to get a hold of what all fence means in 3052. And I'm still, all bridges, sorry not all fence, but all bridges, the language you point to. And what I thought the first time I read that is shall be installed on all bridges. It's not temporary. It's the permanent when they're done, you have to do this. Correct. It doesn't say that. It says all bridges. All bridges includes those bridges that are under construction, those bridges that are there temporarily. It doesn't modify all bridges. All means all. I don't think it's crazy to say completed bridges. Put to the side the restoring an existing bridge. What about building a bridge in the first instance? When does this kick in? Does it kick in the first time you have one thing going across the road? Does it kick in when you've got a couple things going across the road? Or I think quite plausibly it kicks in when the bridge is done, which is when the obligation exists. Not when some vandal could walk across and pick something up and drop it. I'm just looking at the language. I don't think that's crazy. With the new amended language, it would include building a bridge that you would have temporary. I got it. I'm going back to your all bridges point. The initial construction, I think a fair point would be it doesn't apply until it's done. Not a bridge. You have to look at the fact that they removed the bridge, they created a risk, and they did nothing to mitigate it. Let's say you remove the bridge, and that's fine. We're not arguing that they couldn't remove the bridge. We're saying that they violated their own policy by removing the bridge. But secondly, and secondarily, when you did that, you did nothing to mitigate the risk of harm. The harm was substantially greater after you removed it. You could have put a guard right there at night with a light. We protect our equipment, but we don't protect the public. We protect our equipment when we think we're going to lose money. But we don't have any sanctity for the life that's traveling on I-75. He's asleep in his car driving down the road, and the next thing he's in the hospital, 48 hours later he's dead. A 22-year-old young man. Counsel, I've got a question. I want to make sure I understand the law that we're dealing with. Do I understand this correctly? You brought a negligence claim. Asserting that the defendant did not exercise due care in guarding the property in the sense of making sure that what could be anticipated and should have been anticipated didn't occur by putting up fences. As I understand it, defendant asserts a defense to that which has developed under the law, which is that, well, I can't be liable if I followed the instructions of the Department of Transportation. Is that correct so far? That is absolutely correct. And your position is that you didn't follow it? That the manual in fact requires this, therefore you don't have a defense and we get to the question of negligence? Correct. Okay. So I've got a couple of other questions then. Is your entire argument based on the defendant not having followed the manual? No. Our secondary argument is that the court's reliance on Jackson v. City of Franklin is misplaced. Jackson v. City of Franklin was a plaintiff who was representing her son's estate who drowned in a municipal swimming pool because the company had created and constructed the swimming pool, but the water was too deep. And the way that the lifeguard was positioned, he couldn't see swimmers. In other words, he had a blind spot. But the company had nothing to do with where the lifeguard was positioned, where the lifeguard was sitting or standing. So the contractor had nothing to do with that. The contractor had completed the project, had finished the project, delivered it to the city, and it was a third party that had created the design. This was purely a design defect type case. That's not the case we have here. This was not where the ODOT was given the project and says, okay, we're done, we're finished. Are you saying that that defense doesn't apply at all? I mean, that we shouldn't even be looking at it and trying to figure out whether it was required or not under the manual? There's a couple of exceptions that I take with the district court's ruling. Number one is that that case was a design defect case, so it's not applicable. It's also clearly distinguishable from the facts that we have here. It was not a completed project. It was a project that was ongoing. Thirdly, to say that because ODOT's involved that we're no longer involved, this particular case did not involve the municipality. The swimming pool was, but the design was from a third party. And then they cite FAR, which is another decision that has the same proposition, but in FAR, ODOT was involved, and the court actually remanded the case saying that there were questions of fact as to whether or not there was adherence to negligence standards in terms of their duty of care. So I don't think the FAR case even helps, and I don't believe Jackson is on all fours with this particular set of facts. So I don't think that it's simply that they didn't follow the manual. They didn't follow the manual, and they didn't do anything to mitigate those damages. They could have put lighting there, they could have put cameras there, they could have put a security guard there, they could have closed the freeway. That was the intent when they started the proposal. The contractor, along with ODOT, had agreed that we would close. I'm sorry, I'm running out of time. I did reserve some for rebuttal. Why don't you finish this last point, and then you'll get your full rebuttal, and we may have a few more questions after that. But why don't you finish this point, and we'll hear from the other side. In that particular instance, they had agreed that they were going to close it down. It was the city of Toledo that said, we don't want it closed. And so because of political pressures, they allowed the bridge to be opened and did it in a phased construction. And that in lies the problem. They knew that that was not a feasible alternative. Thank you, Mr. Wilder. We'll hear from Ms. Padgett. Good morning, Your Honors. May it please the Court, my name is Kiana Padgett, and I represent the Appalachia Coasting. The law at issue here is simple, and there does not appear to be disagreement over the law. Under Ohio law, once a contractor has agreed to undertake the performance of a contract with the Ohio Department of Transportation, or ODOT, the contractor cannot be held liable for negligence unless he does not follow the plans and specifications, or unless the plans are so obviously defective that no reasonable person would follow them. What if the plans and specifications don't address the issue? Aren't there certain things that are just left to the good judgment of the contractor? I think what might be helpful to clarify here is, in this particular project, Coasting was the contractor. There was an engineer who designed the plans and the drawings. ODOT reviews those, they approve them, they pass them on to the contractor. There's a line that I think is very helpful, it's a quote in the Jackson case, that kind of explains and gives a really good context for this law that I think goes to your question, Judge White. The quote is, how was an ordinary contractor or builder to know this? The matter was for the engineers and architects to determine and design. The builder's experience might have suggested that another construction would have been better, but it was not its judgment on these matters which was to be taken, and it was justified in relying upon the experience and skill of the architect and supervising engineer. That seems to me to prove the plaintiff's point. We're not talking about design drawings, we're not talking about where to place something. We're talking about the type of thing that is usually managed at the site. If this is hypothetical, let's say that it doesn't include things about barricades and safety, what it involves, the manual or the instructions or the plans that were given, address how you build something, where you put things, what the specifications have to be and all of that. Are you saying that because it doesn't explicitly say you have to put up safety barriers, then there's no liability because it happened to be a DOT contract? Cocosin was required by contract with ODOT to follow the plans and specifications. I guess the most direct response to that would be, correct, they had to follow the plans and specifications. It's about the design to follow up with what Judge White's saying. In other words, you're talking about the design of the bridge, how it's going to be constructed, what's safe about the load bearing and all that stuff. Whereas what Judge White's getting at is, if you see an obvious safety flaw or safety flaw with the project, obvious is a loaded word in this context, but you see a safety flaw. Isn't that on the person on site to fix that? I think the law anticipates that because the second part of that is, unless the plans are so obviously defective that no reasonable person would follow them. There's no evidence here for that. We have an expert engineer who said, they properly followed these plans and specifications. There's no expert engineer on the other site saying... You're talking about the plans and specifications. That strikes me, as Judge Zipar says, as respecting design. It tells you about what it is you have to build. We're talking about something else. We're talking about process. Or the day-to-day safety situation in that project. Maybe you did answer the question. You're saying that if the instructions do not include safety directions, then the contractor has an absolute defense because the contractor did not violate what was given to him. I think that the law is that, but on top of that, the plans and specifications do include these types of safety things. For example, the plans and specifications talked about the sidewalk close signs. You have to have a sign that says sidewalk close and you secure them with the sandbags. The more significant of them is that the city said the roads got to stay open. That's the most important. But for that, none of this happens. Correct, Your Honor. The city required that the roads stay open. I think it's also important to keep in mind what this bridge looked like at the time. The reason why there was no fencing on the north side of this bridge is because the roadway there, the sidewalk, the concrete parapet upon which the fencing was normally put, was all removed. That was gone. So there's a portable concrete or temporary concrete barrier, which I'm sure you've seen along highways. Can you answer the same question Judge Sutton asked your friend? Did they throw, just so I'm clear, over the side that's open or the side that's closed? When you say open or closed, do you mean open to pedestrians? Yes. We believe they were standing in the lane of active traffic. There's no sidewalk there. The sidewalk was completely gone. It was beams and air. So it goes no bridge where it was, where everything's been removed, a portable concrete barrier, live lane of traffic, regular sidewalk with the fencing. Oh, I thought your friend said they were on that side. They were on the other side. There was no sidewalk. Where was the sandbag that they got? That might be where the confusion is. That's left to speculation. They were on signs. And that's also in the plans and specifications. When you say sidewalk closed, they pick up a bag off the sidewalk closed sign. Presumably, yes. And walk across to the part where there's no sidewalk now. Correct. And how wide was this? Under normal conditions or at the time, it was one lane of traffic at the time and then the pedestrian sidewalk on the opposite side. To the north of that temporary concrete barrier, there was nothing. But ordinarily, it's a three lane bridge with pedestrian sidewalks on both sides. So how do they get over there if there's nothing? They were standing in the active lane of traffic and threw it over the concrete barrier. Correct. Which I think is a good point of, and I think Chief Judge Sutton, you mentioned this earlier, anything that could have been done beyond not having the sidewalk, having a concrete barrier, them being in an active lane of traffic, there's sidewalk closed signs, anything else that could have been done is just speculation, which doesn't defeat summary judgment. Because they're standing in a live lane of traffic where there is no sidewalk, where there are signs saying sidewalk closed. Let's say even there was a fence. They could have gone from either end where there was a fence. They could have gone from the side of the bridge, off the bridge, and thrown stuff over. So I understand that the concrete barriers, you throw something over that, you're throwing it into live traffic. At this particular time, yes. And so, fencing shall be installed, I'm reading again, on all bridges over vehicular traffic, except as noted herein. But I think... Go ahead. You have to read that in the context of this whole paragraph, and I believe it was Chief Judge Sutton earlier who mentioned the part, Well, first of all, the language does imply there's a bridge, it shall be installed when the bridge is done and ready. But it actually explicitly says that. For existing bridges, fencing shall be provided when new concrete or refaced concrete barriers are installed. At this time, that was gone. The road, the sidewalk, the concrete barrier, parapet, all of that was gone. So, at some point when it was back, presumably that would have been installed. But that was not the factual situation that they were in. And I agree with the questions from earlier. So, I want to clarify something first, too, about the bridge design manual. The bridge design manual is not part of the plans and specifications, or part of the contract between Cocosin and ODOT. Just to make sure I'm understanding how you think that should work. I mean, is what's supposed to happen, is the contract supposed to say to Cocosin, Hey, everything you do has to be consistent with the bridge design manual? Was that what you're looking for? No, Your Honor. The bridge design manual is actually a design manual for the designer of record. So, again, Cocosin You're saying for the engineer? Correct. Or whoever's designing the project. Was there a contract with the engineer in the record? Who makes the contract with the engineer? That's not in the record, Your Honor, but typically it's similar to the contractors. It would be a process through ODOT where they submit their proposal. ODOT picks the engineer and then And the plaintiff is suing ODOT in Ohio? Correct. The plaintiff is suing Cocosin, not the engineer, but ODOT. But because it's ODOT, it has to be through the court of claims, which is why it's not part of this case. But why does it provide you the defense? Because Cocosin followed, as the contractor, they followed the plans and specifications that they were, by contract, required to follow. So are you saying the manual has nothing to do with this? Correct, Your Honor. The first part of this is the manual has nothing to do with it. But even if it does, and even if they had to follow it, they did not follow it. Then I guess I don't understand how this operates. Let's assume the manual, that you're right, the manual has nothing to do with it. So there's a negligence action. And you're saying that it's a defense, if you can say, I followed the plans and specifications. Now, how can it be that that's a defense if the claim has nothing to do with the plans and specifications? It kind of goes back to what I was asking earlier. I guess I just don't get it. If what you are alleged to have done wrong has nothing to do with the plans and specifications, why is it a defense? I think it does have to do with the plans and specifications, Your Honor. There's actually a drawing. It's in the record. It's on page ID number 209. It was one of the exhibits attached to the motion for summary judgment. And it's the engineering experts report. There's a figure on there where he pulled the picture from the engineering designs. And it shows in phase one, which is what we were in, it shows the picture of here's the concrete barrier. Here's where you're placing it. It shows no fencing on that. In phase two, or later in the project, it shows those similar drawings, but with the fencing. And the explanation from ODOT is in some of the correspondence from after this incident, where they're saying they didn't have fencing at this point because the sidewalk was closed. It was removed. And there was pedestrian access on the other side. And this was part of the plans and specifications. Correct, Your Honor. So you're saying that they followed those drawings. I know you're not the lawyer in the case, but do you know the status of the ODOT court of claims case? I am not the lawyer in that case, Your Honor. But typically they are, when there's two parallel cases, two separate cases, typically the court of claims pauses that case until the other case is resolved, and then they proceed on the claims against ODOT. And that was my understanding last I knew with regards to that case. Very clever, because then they will have fewer damages. Correct, Your Honor. I want to go back, too, to some of the issues with the bridge design manual. Not only does the manual that was in place at the time not reference temporary barriers, portable concrete barriers, doesn't mention construction. We've already talked about how the language itself references existing bridges and what is installed after the concrete is there. But on top of that, none of the changes to the bridge design manual after this incident make sense if it was required in the first place. Because all ODOT would have said is, it was required, why didn't you have it? Whereas what happens after this is there's the new section on temporary vandal protection fencing, which specifically references the use of it during construction. ODOT creates a design data sheet and a standard bridge drawing sheet for temporary vandal protection fencing, which did not exist before. They were not in place, which means there were no drawings for this. There's correspondence afterwards as well. Two days after this incident, they're talking about looking for a solution and how to address the lack of fencing during Phase 1. Nine days later, an ODOT project engineer is talking about, we're looking with the designer to figure out how we can change the plan so that we can have something here to address this. And then over three weeks after the incident, the Deputy Director of the Division of Engineering of ODOT issued an inter-office communication requiring that effective immediately, temporary vandal fence shall be installed on bridges that are being replaced or rehabilitated using stage construction, which was here. Again, all of that correspondence, in addition to the changes in the bridge design manual that came after, indicates that there were no plans here before this for this type of fencing. And if ODOT did intend for it to be included, the person who was there doing the daily inspections could have said, you guys aren't following this, you should have this. They never said that. Okay, thank you very much. Thank you. Mr. Wilder, you've got some rebuttal. Just briefly, I want to clarify some things that may seem ambiguous. Council wants this panel to basically cloak the contractor in some kind of quasi-governmental immunity because it's contracted with ODOT. First of all, that's a bad public policy. The contractor makes millions of dollars on these projects. They have insurance. Why should the state have to pay for simple acts of negligence? This is not a design defect case. And perhaps we got off track because we were talking about the design manual. But the design manual embedded when a fence is required. That was the point. They did not have to have a fence. I'm not saying nor suggesting, nor did I do at the district court, suggest that they had to have a fence. But this is an act of ordinary negligence, which is a safety issue. The fence is the best primary way of preventing this type of incident. I disagree. The best way is to shut the road down and put big fences at either end. And we know politically why that's difficult. But that's not, Cocoasin was not involved in that choice. I wouldn't disagree with you. Shutting it down would certainly be at the top of the list with the protective fencing. Protective fencing only discourages. It does not prevent. Closing it doesn't. These were 13-year-old kids. This was not some people that were hell-bent on throwing sandbags. These sandbags are 35 pounds. It was a 13-year-old kid who had to grab it with two hands. And he literally dropped it. He didn't throw it. He dropped it. Because there's nothing there. There's nothing there preventing him. They weren't encouraging him to stand there. That was very dangerous what he was doing to himself. I understand that. And that's why it should have been closed. But alternatively to being closed, if you had a laptop on the site. I can imagine him falling and there being a lawsuit of how could you allow this possibility. There were a lot of possibilities here. Yes. And that's why I believe another alternative means would have been to have a security person there in off hours that sat in a car with a little light that cut on. And it prevents and deters people from doing that. Particularly 13-year-old kids. This was a 13-year-old kid. And three 14-year-old kids. These were not grown men. These were little kids. The state, after this incident occurred, Matt Bruning, the ODOT spokesman said, there shouldn't be any period of time where there isn't fencing. Appellant agrees. And we ask that you remand this case or vacate the decision and reverse the decision of the district court. Thank you. Thank you, Mr. Wilder. And thank you, Mr. Padgett, for your helpful briefs and arguments. We really appreciate it. The case will be submitted and the clerk may call.